IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No.  2:16cr171 (RCY) |
| | ) | |
| JAMES LEONARD LANDRY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Compassionate Release (ECF No. 108) ("Motion for Compassionate Release"), the Response in Opposition by the United States (ECF No. 112), Defendant's Reply (ECF No. 116), the exhibits related to these documents, and other related filings.  The Court has reviewed these documents and all exhibits, and the matter is ripe for disposition.  The Defendant's motion, brief, and letter filed by the Defendant *pro se* at ECF Nos. 93, 95, and 96 were supplanted by the Motion for Compassionate Release (ECF No. 108), as stated in the Court's Order of September 7, 2021 (ECF No. 99), but the Court has reviewed and considered those documents as well.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  For the reasons that follow, the Court will deny the Motion for Compassionate Release.

## I.  BACKGROUND

On December 22, 2016, James Leonard Landry ("the Defendant" or "Landry") was indicted on four counts as follows:  Counts One through Three, Receipt of Images of Minors

Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2), and Count Four,

Possession of Images of Minors Engaging in Sexually Explicit Conduct, in violation of 18

U.S.C. § 2252(a)(4)(B). (Indictment, ECF No. 17 at 1.) On February 13, 2017, Landry pled

guilty to Count Four of the Indictment. (Plea Agreement, ECF No. 23 ¶ 1.) The parties agreed

that "[s]hould the Court find that defendant's prior conviction under Virginia Code § 18.2-370

relate [sic] to the aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a

minor or ward, the maximum penalties for this offense are a mandatory minimum term of

imprisonment of ten (10) years, a maximum term of twenty (20) years of imprisonment . . ." but

"[s]hould the Court find that defendant's prior conviction under Virginia Code § 18.2-370 does

not relate to the aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a

minor or ward, the maximum penalties are a maximum term of twenty (20) years of

imprisonment . . . ." (Id.) Thus, the parties agreed that they would litigate this issue before the

district court. The parties also agreed that Landry could "appeal the district court's

determination as to whether defendant's prior conviction under Virginia Code § 18.2-370 relates

to the aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a minor or

ward, as provided in 18 U.S.C. § 2252(b)(2)." (Id. ¶ 6.) The Court conducted a plea colloquy

pursuant to Rule 11 of the Federal Rules of Criminal Procedure and accepted the plea. (Feb. 13,

2017 Tr., ECF No. 80 at 1–24.)

After the issue was briefed and argued, Judge Morgan issued on an Order on April 24,

2017, finding that the mandatory minimum provision in 18 U.S.C. § 2252(b)(2) properly applied

to Landry. (ECF No. 39 at 2.)

According to the Presentence Investigation Report ("PSR"), the advisory Guidelines

range was 97 to 121 months but, because the statutory mandatory minimum sentence for Count

Four was 120 months, Landry's restricted Guidelines range was 120 to 121 months of imprisonment. (PSR, ECF No. 40 ¶ 79.)  On May 22, 2017, the Court sentenced Landry to 120 months of imprisonment. (J. 1–2, ECF No. 50.)  Landry has served slightly more than 50% of his sentence, and he has an anticipated release date of June 23, 2025. (Mot. Comp. Release at 2; Inmate Locator (bop.gov) & enter Landry's name or inmate number).

In the Motion for Compassionate Release, Landry argues that he is at a higher risk for severe illness from COVID-19 due to several conditions:  hyperlipidemia, sleep apnea, hypertension, a hernia, and asthma. (Mot. Comp. Release at 1–3, 8–10.)  He also argues that he "is desperately needed at home, as his family circumstances are extraordinary and compelling," noting that his "son is disabled, and his wife has a degenerative arthritic condition that has worsened significantly within the last 12 months." (*Id*. at 2.)  Landry elaborates on his family circumstances, noting that his son has established "[p]ermanent incapacity for self-support," and that his wife's condition, Ankylosing Spondylitis, has worsened, making it very difficult for her to care for their son. (*Id*. at 13–14.)  He also contends that Petersburg Low is at Level 3, which indicates that "the facility has a less than 50% vaccination rate, that the medical isolation rate is greater than 7%, and that the community transmission rate is greater than 100% per 100,000 individuals over the last 7 days." (*Id*. at 1.)  Landry also informs the Court that he was vaccinated in March 2021, he but contends that, because it has been over seven months since his second vaccination, he is not fully protected. (Reply, ECF No. 116 at 3–4.)  Landry contends that the BOP is not able to protect its population against COVID-19. (Mot. Comp. Release at 3, 6–8.)  He also contends that the COVID-19 situation in prisons in general, including FCI Petersburg Low, combined with his risk necessitates his release. (*Id*. at 15.)  Landry plans to live with his wife and son in Virginia Beach. (*Id*. at 2–3, 13–15.)

## II.  LEGAL STANDARD:  COMPASSIONATE RELEASE
## UNDER THE FIRST STEP ACT OF 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons," "upon motion of the Director of the Bureau of Prisons," or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).  Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.*  Section 3582(c)(1)(A) also requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id.*

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019).  While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  It is also generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021

WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted).  "In assessing whether the record

shows the existence of extraordinary and compelling reasons for compassionate release, courts

consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and

non-binding policy statements of the United States Sentencing Guidelines." *Id.*  "[T]o constitute

extraordinary and compelling reasons for compassionate release, medical conditions must be

serious." *Id.*  To establish the existence of "extraordinary and compelling" reasons for

compassionate release because of COVID-19,[1] a defendant generally must show "both a

particularized susceptibility to the disease and a particularized risk of contracting the disease at

his prison facility." *United States v. White*, No. 2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D.

Va. Apr. 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that

"there currently exists no 'applicable policy statement'" because the Sentencing Commission has

not issued a policy statement since the passage of the First Step Act. *Id.* at 281.  Therefore, until

the Sentencing Commission issues an updated policy statement, "district courts are 'empowered

to consider any extraordinary and compelling reason for release that a defendant might raise.'"

*Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir.

2020)).

Although the policy statement in U.S.S.G. § 1B1.13 is no longer binding on this Court

after the Fourth Circuit's decision in *McCoy*, many courts are treating § 1B1.13 "as providing

useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," but

they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1),

---

[1] Landry, age 54, contends that he "suffers from a number of comorbidities that significantly increase his risk for a severe or fatal reaction to COVID-19:  hypertension, hyperlipidemia, sleep apnea, and asthma." (Mot. Comp. Release at 9.)

2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also*

*United States v. Spencer*, No. 2:11cr30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting

that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but

that "the court finds certain of its provisions useful in addressing [compassionate release

motions]").

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family

circumstances, or other circumstances, either singly or in combination, can prove sufficiently

extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application

notes 1(A)-(D).  It advises that, to be extraordinary and compelling, a defendant's medical

conditions must be either "terminal . . . with an end of life trajectory" or must "substantially

diminish[] the ability of the defendant to provide self-care within the environment of a

correctional facility and from which he or she is not expected to recover." § 1B1.13, application

note 1(A).

Similarly, a defendant may be released based on his advanced age when he "is at least 65

years old," "is experiencing a serious deterioration in physical or mental health because of the

aging process," and "has served at least 10 years or 75 percent of his or her term of

imprisonment." § 1B1.13, application note 1(B).  Defendants may also seek compassionate

release based on family circumstances, including when the caregiver of a defendant's minor

child has died or become incapacitated, or when the defendant's spouse or partner has become

incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, cmt.

application note 1(C).  Finally, the Sentencing Guidelines contemplate situations in which "there

exists in the defendant's case an extraordinary and compelling reason [for compassionate

release] other than, or in combination with, [the defendant's medical conditions, age, and family

circumstances]." § 1B1.13, cmt. application note 1(D).

Even if extraordinary and compelling reasons exist for a reduction in sentence, 18 U.S.C.

§ 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18]

to the extent they are applicable" and "applicable policy statements issued by the [United States]

Sentencing Commission" before granting a sentence modification.  To that end, § 3553(a)

requires courts to consider, among other factors, the nature and circumstances of the underlying

offense and the history and characteristics of the defendant, as well as the need for the sentence

imposed to reflect the seriousness of the offense, promote respect for the law, provide just

punishment, afford adequate deterrence and protect the public from further crimes of the

defendant. 18 U.S.C. § 3353(a)(1)-(2).

The Fourth Circuit provided additional guidance in *United States v. Kibble*, 992 F.3d 326

(4th Cir. 2021).  It explained that the district court must "reconsider[] the § 3553(a) factors in

view of the extraordinary and compelling circumstances present in [the defendant's] case." *Id*. at

332.  In his concurring opinion, Chief Judge Gregory makes it even more clear that the district

court may not "fulfill its duty to reconsider the § 3553(a) factors by merely recounting the

considerations that supported the original sentence." *Id*. at 335 (Gregory, C.J., concurring).

"Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon

a motion for compassionate release than they did at the initial sentencing." *Id*.  "If a district

court's original § 3553(a) analysis could always prove that a sentence reduction would

intolerably undermine the § 3553(a) factors, then 18 U.S.C. § 3582(c)(1) would, in effect, be a

nullity." *Id*.  Judge Gregory notes that "[a] day in prison under the current conditions is a

qualitatively different type of punishment than one day in prison used to be," and that "[t]hese

conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect." *Id*. at 336.

Courts must also consider "evidence of rehabilitation and other post-conviction conduct." *United States v. Brown*, No. 3:90cr113, 2021 WL 3206548, *2 (E.D. Va. 2021) (citing *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B))). The *Brown* decision also notes that a defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Id*. (citing 28 U.S.C. § 994(t)).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[2] U.S.S.G. § 1B1.13(2). As noted herein, pursuant to *United States v. McCoy*, the policy statement is not binding, but it provides useful guidance.

Ultimately, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

---

[2] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

### III. ANALYSIS

The parties agree that the Defendant exhausted his remedies as required. (Mot. Comp.

Release at 3; Response, ECF No. 112 at 6 n.1.)

After a careful review of the motion, response, reply, exhibits, including in particular the

medical records, and other related documents, the Court concludes that Landry's health

conditions, although serious, do not support a finding of extraordinary and compelling reasons

for a reduction in his sentence. The medical records indicate that Landry has hypertension,

hyperlipidemia, asthma, sleep apnea, and a hernia, but the records also indicate that these

conditions appear to be well-managed. (ECF No. 117; Mot. Comp. Release Ex. A, ECF No. 108-

1.) The CDC provides guidance regarding certain medical conditions and distinguishes between

individuals with certain conditions who "are more likely to get severely ill from COVID-19" and

those whose conditions "can make you more likely to get severely ill from COVID-19." *See*

People with Certain Medical Conditions | CDC (Updated Oct. 14, 2021). According to the CDC,

both hypertension and asthma, if it is moderate to severe, "can make you more likely to get

severely ill from COVID-19." (*Id*.) Hyperlipidemia, sleep apnea, and hernias are not on the

CDC list. But where a defendant is receiving medical treatment to manage his medical

conditions, courts have found that these conditions do not establish a particularized susceptibility

to COVID-19. *See United States v. Reid*, No. 2:02cr172, 2020 WL 7318266, at *2 (E.D. Va.

Dec. 10, 2020) (hypertension being treated so defendant not "particularly susceptible to COVID-

19"); *Barrett v. United States*, No. 4:15cr47, 2020 WL 6206008, at *3 (E.D. Va. Oct. 22, 2020)

(hypertension combined with defendant's age and medical treatment to manage his hypertension

does not place him at increased risk); *McKenith v. United States*, No. 7:14cr26, 2021 WL

4527243, at *5 (E.D.N.C. Oct. 4, 2021) (compassionate release denied despite heart conditions

and hypertension); *United States v. Volious*, No. 3:17cr575, 2020 WL 5988143, at *3 (D.S.C.

Oct. 8, 2020) (compassionate release denied despite heart conditions, sleep apnea, and asthma);

*United States v. Austin*, 825 F. App'x 324 (6th Cir. 2020) (affirming compassionate release

denial despite inmate having heart conditions and being immunocompromised); *United States v.*

*Feiling*, 453 F. Supp. 3d 832 (E.D. Va. 2020) (denying compassionate release despite inmate

having diabetes, hypertension, obesity, respiratory issues, and metabolic syndrome); *United*

*States v. McKay*, No. 18cr305, 2020 WL 7398865 (D. Md. Dec. 17, 2020) (compassionate

release denied despite inmate having hypertension and borderline obesity); *United States v.*

*Wright*, No. 17-0388, 2020 WL 2571198 (D. Md. May 21, 2020) (denying compassionate release

to defendant at the age of 66 with diabetes, hypertension, chronic kidney disease, asthma, and

obesity); *United States v. Barringer*, No. 13-0129, 2020 WL 2557035, at *4 (D. Md. May 19,

2020) (denying compassionate release to a 60-year-old defendant with hypertension, diabetes,

chronic kidney disease, and extreme obesity).

   The medical records indicate that Landry, age 54, is receiving on-going treatment for his

medical conditions and that they are being well-managed. (ECF No. 117.)  While his medical

conditions are serious, they do not establish an extraordinary and compelling reason for

compassionate release.[3]  In addition, Landry was vaccinated with the Pfizer-BioNTech vaccine

in March 2021. (Reply at 3-4; Response at 9.)  Many courts have ruled, "on the basis of present

understanding, that the highly effective available vaccines dramatically affect whether an

inmate's medical conditions constitute the 'extraordinary and compelling reason' required to

---

[3] Although not raised in any of the documents seeking compassionate release, the United States Probation Office states that Landry's request for compassionate release submitted to the Warden on August 2, 2020, contended that he had a "Debilitating Medical Condition" and a rating "as 90% disabled by the Veteran's Administration." (ECF No. 115 at 2.)  This rating as disabled by the VA, and the possible corresponding financial benefits, are not addressed in the PSR.

further consider compassionate release." *United States v. Gregory*, No. CR 13-0334, 2021 WL

1909605, at *4 (D. Md. May 12, 2021) (collecting cases). The Court notes Landry's concern

about the length of time that has passed since his second vaccination, but, as stated previously,

the "mere existence of COVID-19 in society and the possibility that it may spread to a particular

prison alone cannot independently justify compassionate release, especially considering BOP's

statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954

F.3d at 597.

Landry is housed at FCI Petersburg Low. There are currently no positive inmate cases

and two positive staff case at that facility; no inmates and no staff at that facility have died of

COVID-19; and there have been a total of 235 inmates and 39 staff members who tested positive

and recovered, according to data available at www.bop.gov/coronavirus/ (updated daily at 3:00

p.m.) (last visited November 17, 2021). Landry cannot establish a particularized risk of

contracting COVID-19 at FCI Petersburg Low given the lack of positive cases there currently.

Accordingly, the Court finds that Landry has not established an extraordinary and compelling

reason for a reduction in his sentence based on his medical conditions and COVID-19.

Landry also argues that his family circumstances (and these circumstances in

combination with his medical conditions and the existence of COVID-19) constitute an

extraordinary and compelling reason for a reduction in his sentence. Landry explains that his son

is disabled and that his wife's condition, Ankylosing Spondylitis, has worsened, making it very

difficult for her to care for their son. The Court has reviewed Landry's arguments and the

relevant exhibit, and the Court notes, as previously stated herein, that defendants may also seek

compassionate release based on family circumstances, including when the caregiver of a

defendant's minor child has died or become incapacitated, or when the defendant's spouse or

partner has become incapacitated and the defendant constitutes the only available caregiver. U.S.S.G. § 1B1.13, cmt. application note 1(C).  In addition, application note 1(D) addresses situation where there is a combination of circumstances, which Landry argues exist in his case. In his reply, Landry contends that "the Government's lack of any response to this ground, clearly raised by Mr. Landry, for compassionate release can only be interpreted by this Court as a concession that Mr. Landry has indeed presented the Court with extraordinary and compelling reasons for his release." (Reply at 2.)

In the PSR, finalized in May 2017, it was noted that Landry's son was "autistic and can be aggressive." (PSR ¶ 48.)  While the application note refers to a "minor child," the Court would agree that caring for an autistic child past the age of 18 is sufficiently similar to caring for a minor child.  The PSR also noted that "[a] caretaker comes to care for [him] from 3:00 p.m. to 9:00 p.m." (*Id.*)  It was further noted in the PSR that "there were times when the defendant lost his temper with him and tried to pin him down to the ground because he would not listen," and that their son stated that "he and the defendant do not always get along." (*Id.*)  The PSR also reflects Mrs. Landry's medical condition. (*Id.* ¶ 47.)

The Court sympathizes with Landry's wife regarding her medical condition and her responsibilities toward their son.  The Court is not aware whether there is a caretaker for their son at this point.  The August 31, 2021 Rating Decision from the Veterans Administration, the exhibit referenced as ECF No. 108-5 and filed at ECF No. 117-1, states that "[p]ermanent incapacity for self-support was established . . . in rating dated August 30, 2017, and is confirmed and continued," with an effective date of November 22, 2016.  The Court presumes from this document that financial benefits result from this designation by the Veterans Administration regarding Landry's son.

Unfortunately, "[t]he simple fact is that the Court is confronted on a regular basis with the fact that defendants who are incarcerated are separated from their families, including a spouse, a child, even newborn children.  For that reason, those circumstances [separation from family members] simply cannot be considered as extraordinary." *United States v. Pilgrim*, No. 3:19cr50-01, 2021 WL 2003548, at *3 (E.D. Va. May 19, 2021); *see also United States v. Lottier*, No. 7:16cr030, 2020 WL 7233363, at *2 (W.D. Va. Dec. 7, 2020) (collecting cases denying release absent a "robust evidentiary showing" that the defendant is the only available caretaker).  Landry has not met this robust evidentiary showing that he is the only available caretaker.  Even in combination, the Court does not find that Landry's medical conditions, the presence of COVID-19 in the prisons in general and at FCI Petersburg Low, and his family circumstances constitute an extraordinary and compelling reason for compassionate release.

Moreover, even if the Court found that Landry had established an extraordinary and compelling reason for a reduction in his sentence, the Court does not, in its discretion, find a reduction in Landry's sentence to be appropriate under the relevant § 3553(a) factors and non-binding policy statements.  The Court finds that a reduction in Landry's sentence would undermine the relevant § 3553(a) factors.  In particular, a reduction in Landry's sentence would undermine the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence, given the nature and circumstances of the underlying offense, and Landry's history and characteristics.

Landry has served just over 50% of his 120-month sentence, the mandatory minimum term of incarceration required by statute.  When Landry was on supervised probation after his 2005 state conviction, he completed sex offender treatment in 2007 but, in 2008, he violated conditions of probation. (PSR ¶ 35.)  Ultimately, he completed that term of probation in 2013,

three years before committing the instant offense. (*Id.*)  Landry has done well while he has been incarcerated on the instant conviction, having completed educational and vocational programs, and having had only one infraction during his period of incarceration. (Mot. Comp. Release at 10–11.)  But it is very troubling that Landry committed the instant offense and was attributed with more than 18,000 images of child pornography *after* he completed sex offender treatment. (PSR ¶¶ 13, 35.)

The Court finds that Landry's sentence is reasonable and appropriate, and it is no greater than necessary to achieve the objectives of 18 U.S.C. § 3553(a).  A reduction in Landry's sentence would undermine the § 3553(a) factors and relevant policy statements.

## IV.  CONCLUSION

For the reasons set forth herein, Landry's Motion for Compassionate Release will be denied.

An appropriate Order shall issue.

/s/

Richmond, Virginia                                        Roderick C. Young
Date: November 22, 2021                                  United States District Judge

14